**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS**

| | |
|---|---|
| **APRIL HALE**, individually, **LEN CLINE**, individually and on behalf of all others similarly situated, | Case No.   20-5245 |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **TELADOC HEALTH, INC.**, a Delaware corporation | |
| *Defendant.* | |

Plaintiff April Hale ("Hale" or "Plaintiff Hale") and Plaintiff Len Cline ("Cline" or "Plaintiff Cline") bring this Class Action Complaint and Demand for Jury Trial against Defendant Teladoc Health, Inc. ("Teladoc" or "Defendant Teladoc")  to stop Teladoc from engaging and reaping the benefits of their marketing partner Health Insurance Innovations, Inc. ("HII") who calls consumers directly and through 3rd party lead generators to sell insurance products on behalf of Defendant Teladoc to consumers by calling them without consent in violation of the Telephone Consumer Protection Act ("TCPA").  Defendant Teladoc by contracting with HII, makes HII their agent and/or ratifies their conduct of using lead generators to make unsolicited, autodialed and/or prerecorded calls to consumers without the consumer's consent, including calls to consumers registered on the National Do Not Call registry "(DNC)", and to otherwise obtain injunctive and monetary relief for all persons injured by the conduct of the Defendant. The Plaintiffs, for this Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

1.      Teladoc is a company that sells on-demand remote medical care to consumers for a fee.[1]

2.      Teladoc partnered with HII to sell its $29.99 membership package on its behalf and HII and Teladoc share the profit from each sale.

3.      Defendant Teladoc's telemarketing scheme entails hiring HII to make the calls directly (or have HII contract with lead generators) to make outbound calls to potential consumers and to contractually bind those consumers directly to Defendant Teladoc.  A consumer will then directly pay Teladoc a monthly membership fee of $29.99 for Teladoc's service.

4.      Defendant Teladoc directly benefits from HII's telemarketing as it is the beneficiary of any sale made by HII and Defendant Teladoc enters into a direct contract with any consumer HII or its agents sign up.

5.      Defendant Teladoc cannot turn a blind eye to the unsolicited calls being made on their behalf and for their financial gain by partnering with HII to make calls to consumers without consent on their behalf.

6.      Plaintiff Hale received at least 25 autodialed and/or prerecorded calls to her cellular phones, despite the fact that the Plaintiff Hale registered her phone number on the DNC in order to avoid such calls and never gave prior written express consent to the Defendant to be called in the first place. In addition, Hale opted-out from receiving additional calls numerous times, but Defendant Teladoc's agent HII and/or HII's agents continued to call her.

7.      Plaintiff Cline received at least 8 prerecorded calls to his cellular phone, despite the fact that Plaintiff Cline registered his phone number on the DNC in order to avoid such calls

---

[1] https://www.linkedin.com/company/teladoc-health/about/

and never gave prior written express consent to Defendant Teladoc or its telemarketing agents to be called in the first place. In addition, Cline opted-out from receiving additional calls numerous times, but Defendant Teladoc through HII or its agents continued to call him.

8.     In response to these calls, the Plaintiffs file this lawsuit seeking injunctive relief, requiring Defendant to cease from placing or engaging third party telemarketers in unsolicited autodialed and prerecorded calls to consumers' cellular telephone without consent and from otherwise calling telephone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

PARTIES

9.     Plaintiff Hale is a Merkel, Texas resident.

10.     Plaintiff Cline is a Satsuma, Florida resident.

11.     Defendant Teladoc is a New York corporation headquartered in Purchase, New York.

JURISDICTION AND VENUE

12.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

13.     This Court has personal jurisdiction over Defendant Teladoc and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Teladoc resides in this District.

COMMON ALLEGATIONS

**Defendant Teladoc Partnered with Telemarketers
to Make Telemarketing Calls on Its Behalf**

14.     HII operates as an outbound call center and lead generator for Defendant Teladoc.

15.     When Defendant Teladoc's agent HII would speak with a consumer, they would attempt to sell them a basket of health insurance products, one of those products in that basket

was a $29.99 membership to Teladoc.

16.     If a consumer is interested, HII (on behalf of Defendant Teladoc) will send the consumer a Teladoc contract to register for paid services, including a written agreement to sign up with Teladoc.

17.     The agreement is between the consumer and Defendant Teladoc directly.

18.     HII was given actual and apparent authority by Defendant Teladoc to bind the consumer with and was given the apparent authority to represent to others that they had partnered with Defendant Teladoc.

19.     In addition, Defendant Teladoc ratified HII and its lead generators actions by accepting the benefits from HII and its lead generators telemarketing practice.

20.     Defendant Teladoc knew or should have known that HII and its lead generators were making calls on Teladoc's behalf and for their benefit in violation of the TCPA.

21.     Defendant Teladoc should not be allowed to retain all of the financial windfalls of its unlawful telemarketing activities without being held liable for the violations of the TCPA.

22.     The FCC has warned sellers like Teladoc that they cannot avoid liability by outsourcing their telemarketing:

> "[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amendable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Join Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC 6574, at ¶37 (2013) ("FCC 2013 Ruling") (citations omitted).*

23.    Despite this warning, Defendant Teladoc has partnered with HII to generate leads for its own profits.

24.    By the time Plaintiff Hale and Plaintiff Cline received calls by HII or its HII's lead generators in March 2019, HII had already been sued specifically for Telephone Consumer Protection Act violations approximately 10 times.  This was public record and Defendant Teladoc knew or should have known about HII's past allegations of violating the TCPA when Defendant Teladoc contracted with HII to make telemarketing calls on its behalf.

25.    Teladoc's telemarketing partner HII has had other troubling lawsuits related to its telemarketing, and the telemarketing of its lead generators, who sell products on behalf of Defendant Teladoc. On November 2, 2018, the FTC posted a press release announcing that a Federal judge temporarily shut down Simple Health, a lead generator of HII, who had collected more than $100 million in revenue by "preying on Americans in search of health insurance, selling these consumers worthless plans that left tens of thousands of people uninsured."[2] On June 6, 2019 HII announced that it planned to acquire Simple Health. Multiple states have filed cease and desist orders against HII including the State of Montana in 2016,[3] the State of Michigan,[4] and the State of Arkansas.[5] The State of Florida at one time denied HII's licensure as a third party administrator.[6] [7]

26.    On March 13, 2019, 42 states [8] entered into a settlement agreement with HII and

[2] https://www.silverlaw.com/blog/health-insurance-innovations-hiiq-ends-relationship-with-simple-health-plans/

[3] http://csimt.gov/wp-content/uploads/Temp-CD-Order-and-Summ-Jdgmt.pdf

[4] https://www.michigan.gov/documents/difs/Velimir_Rakocevic_Cease_and_Desist_with_Opportunity_for_Hearing_14-11974_455204_7.pdf

[5] https://insurance.arkansas.gov/uploads/legalorders/2016-026-Emergency-CD-Health-Insurance-Innovations.pdf

[6] https://www.doah.state.fl.us/DocDoc/2017/003808/17003808PFAH-070317-16455245.PDF

[7] https://www.doah.state.fl.us/DocDoc/2017/003808/17003808AAL-070317-16455945.PDF

[8] https://iid.iowa.gov/documents/enforcement-orders-and-actions/in-the-matter-of-health-insurance-innovations-inc-and

HII's subsidiary Health Plan Intermediaries Holdings, LLC (the one that called Plaintiff Cline on behalf of Defendant Teladoc).

27.     These actions against Teladoc's telemarketer HII and its telemarketers were all brought *prior* to the calls received by the Plaintiffs on behalf of Defendant Teladoc.

28.     Despite these other prior TCPA lawsuits and the multiple state investigations and litigation, Defendant Teladoc chose to contract with HII to sell their products and services on their behalf.

29.     HII, as Defendant Teladoc's lead generator, has a current D- rating with the Better Business Bureau that Defendant Teladoc could have researched before hiring them as their telemarketer.[9]

30.     There are numerous complaints online from consumers describing unwanted calls from Defendant Teladoc's telemarketer HII despite their being on the DNC:

- I have received numerous unsolicited phone calls and my number is on the Do-Not-Call-Registry. I am requesting someone contact me from the office to discuss this as I am debating filing a complaint with the FTC.[10]
- "Called three times in 2 hours. I've received approximately 45 of these calls from different numbers in the past week. I'm really tired of it."[11]
- "I stayed on the line today after about the 100th call in two weeks and pressed 1 to talk to the guy. Asked him to be taken off the call list and he asked why….told him I had aout 800 calls from them and he got r-e-a-l-l-y snarky and told me 'you must be on our premium call plan and hung up on me[.]"[12]
- "Called me 50+ times per day and I constantly tell them to remove my phone number from the list; as soon as I do they hang up on me."[13]
- "Have been calling me for about 3 months and I block ever one of there numbers. I pressed 2 and it doesn't work! The funny thing is I'm only 14 and they want me to get there insurance. It is total harassment and very annoying!!!"[14]

---

[9] https://www.bbb.org/us/fl/tampa/profile/health-insurance/health-insurance-innovations-0653-90072827

[10] https://www.bbb.org/us/fl/tampa/profile/health-insurance/health-insurance-innovations-0653-90072827/customer-reviews

[11] https://800notes.com/Phone.aspx/1-217-450-9605

[12] https://800notes.com/Phone.aspx/1-505-210-7610/3

[13] https://www.bbb.org/us/fl/pompano-beach/profile/insurance-agency/nationwide-health-advisors-0633-90344592/customer-reviews#50914113

[14] https://800notes.com/Phone.aspx/1-458-209-2126/5

- "somebody catch these people"[15]
- "These damn health insurance telemarketers are as bad as the evil auto warranty. Something has got to be done about this BS…before I take the matter into my own hands"[16]
- "Robo call wanting me to press 1 to speak to a representative about medical insurance. I have received the exact same call from many spoofed area codes which means they are trying to get around calling blocking. Call was to my cell phone on the dnc list. I would love to get a big class action settlement for this."[17]
- "These people keep calling – and leaving voicemails! I pressed 2 "to be placed on the do not call list" – but they still keep calling. I blocked the number but they can still leave automated voice mails – like 10 a day!!! You cannot get to a live person to tell them to stop either. So frustrating. I do't have time for their BS!!!"[18]
- "Health insurance scam. These pieces of sh*t call every single day, at LEAST 3 times a day and it's a different number every day."[19]

31.     Defendant Teladoc knew or should have known about the allegations of its

telemarketing partner prior to and during the partnership with HII.

### Legality of Unsolicited Autodialed and Prerecorded Calls

32.     As explained by the Federal Communications Commission ("FCC") in its 2012

order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded

[solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278,

FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

33.     Yet in violation of this rule, Defendant Teladoc hired HII and its lead generators

who failed to obtain any express written consent from consumers prior to placing prerecorded

and/or autodialed solicitation calls.

34.     On behalf of the Defendant Teladoc, HII utilized an automatic telephone

dialing system ("ATDS" or "autodialer") in violation of the TCPA. Specifically, the hardware

---

[15] https://findwhocallsyou.com/201-225-8495
[16] https://whocallsme.com/Phone-Number.aspx/7272050332
[17] https://800notes.com/Phone.aspx/1-954-234-2726
[18] https://800notes.com/Phone.aspx/1-980-242-3698
[19] https://800notes.com/Phone.aspx/1-980-734-3721

and software used by HII or its affiliates has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

35.     Defendant Teladoc through HII, has failed to implement, supervise, or maintain an internal do not call system whereby consumers would be removed from the calling lists once those consumers ask for the calls to stop.

36.     Defendant Teladoc's agent HII and its lead generators do not have internal Do Not Call policies, pursuant to 47 C.F.R. § 64.1200(d), or they do not adhere to these policies.

37.     As part of Defendant Teladoc's screening process, they should have ensured that HII or its affiliates abide by the TCPA and DNC laws and should have regularly maintained sufficient oversight to ensure they were abiding by those laws since they were calling on behalf of the Defendant Teladoc.

## PLAINTIFF HALE'S ALLEGATIONS

### Teladoc through their Marketing Partner HII Repeatedly Called Hale's Cell Phone Without Hale's Consent

38.     On October 16, 2008, Hale registered her cellular phone number with the DNC in order to avoid receiving unsolicited telemarketing calls.

39.     Hale uses her cell phone for personal use.

40.     Hale's cell phone number is not associated with a business.

41.     Hale began receiving prerecorded calls from, or on behalf of Defendant Teladoc on her cellular phone since March of 2018.

42.     Hale received multiple calls, interrupting her use of her cellular phone.

43.     For example, on March 12, 2019 Hale received 8 calls on behalf of Defendant Teladoc to her cellular phone.

44.     Hale answered two calls on March 13, 2019. Hale specifically opted-out of receiving additional calls both by pressing the button that the prerecorded message indicated would end the calls, and also by asking a live agent to stop calling.

45.     Hale received calls from or on behalf of Defendant Teladoc from the following numbers on March 13, 2019, 704-550-3351, 704-550-3336, 704-550-3324, 704-550-3299, 704-550-3294, and 704-550-3279.

46.     On March 25, 2019 Hale received calls from (737) 200-7360, (267) 371-5457, (267) 371-5425.

47.     Hale has received the following calls from or on behalf of the Defendant: 704-550—2956, 704-550-2603, 704-550-2145, 704-550-2144, 704-550-2257, 704-550-2275, 704-550-2309, 704-550-2436, 704-550-2340, 704-550-2473, 704-550-255, 704-550-2544, 704-550-2573, 704-550-2986, 704-550-3041, 704-550-3042, 704-550-3177, 704-550-3140, 704-550-3245, 704-550-3245, 704-550-3255, 704-550-3279, 704-550-3294, 704-550-3299, 704-550-3336, 704-550-3351, 550-2704-550-3153, 704-550-3227, 704-550-3324, 704-550-3356, 704-550-3227, 704-550-3205, and 704-550-3424. For many of these calls, Hale pressed 0 to be opted out of future calls to no avail.

48.     Despite the opt-out requests, Plaintiff Hale continued to receive prerecorded calls.

49.     Hale became so frustrated by the intrusive calls, she called Teladoc's telemarketer HII or its agents on March 26, 2019 twice. In both instances, Hale opted-out of receiving calls any more calls from Defendant Teladoc or its telemarketer HII.

50.     Unfortunately for Hale, Defendant Teladoc through its telemarketer HII continued to place prerecorded calls to her cell phone.

51.     On April 2, 2019, Hale answered a prerecorded call on behalf of Defendant Teladoc from the number (267) 756-2353 and pressed the button that would connect her with a live agent. The agent recognized Hale, referring to her by name, and proceeded to provide an insurance quote.

52.     Hale acted like she was interested in getting a quote and provided a fake name Tonja Bond in order to find out who was behind the calls she was receiving so she could stop them once and for all. Once the insurance quote was provided, Hale asked to see the plan in writing and received an email directly from Teladoc's telemarketing partner HII using the d/b/a MyBenefitsKeeper[20] containing the insurance plan agreement:

53.     The plan Hale was quoted included a $29.99 membership to Teladoc.

54.     On July 19, 2019, Hale received a pre-recorded call on her cell phone from (603) 651-3934.  The pre-recorded call stated "press 1 for your interest in healthcare, press 9 (or 0) if you want to be placed on the do not call list."  Hale had previously pressed 9 or 0 before for the exact same prerecorded messages to no avail as she had continued to receive calls, so this time she pressed 1 so she could identify this telemarketer in an attempt to finally get the calls to stop.

55.     Hale was connected with an agent named Abel Zubair. Hale played along and gave the name Tonya Bond so she could find out which company he worked for or which company he was selling in order to stop the calls. The agent transferred her to the next agent Emily. The call got disconnected.

56.     On July 19, 2019 Hale received text messages from 913-380-9221 regarding the disconnected call from Emily.

57.     Hale received a text message on July 19, 2019 from and 813 phone number stating "Please follow the link to sign for your policy of Health Choice +

---

[20]  In the legal notice for mybenefitskeeper.com, it is shown that HII owns MyBenefitsKeeper:

http://members.mybk.com/esign/10818871/667174.

58.     The application in the link from MyBenefitsKeeper contained an application for Teladoc, for a Teladoc plan which costs $19.99 per month.

59.     Hale received another call from on July 29, 2019 from 919-379-5214 looking for Tonja, the name Hale gave when investigating the calls. Hale hung up the phone.

60.     On August 1, 2019 Hale received a pre-recorded call about health insurance from 636-721-6750 and 708-856-8078. In each pre-recorded message, she pressed the number to be opted out of their system.

61.     On August 5, 2019 Hale received a pre-recorded call from (435) 467-3329 about Quality Health Insurance. She pressed the digit to be put on their do not call list.

62.     On August 6, 2019 Hale received a pre-recorded call from (435) 816-3042 which solicited for Quality Health Insurance. Hale again pressed the digit to be put on the do not call list.

63.     On August 7, 2019 Hale received a pre-recorded call from (509) 547-6124 stating "This is Quality A Plus Insurance. If you are interested in talking to a licensed agent press 8. If not, press 4."  Hale pressed 4.

64.     On August 15, 2019 Hale received a pre-recorded call from (954) 918-1345 from Quality Health Insurance.  She pressed the digit to be opted out.

65.     In total, Hale received well over 35 calls on her cellular phone on behalf of Defendant Teladoc from either HII, or HII's agents on behalf of Teladoc, despite repeated requests for the calls to stop.

66.     Simply put, neither Teladoc or its telemarketing partners obtained Plaintiff Hale's prior express written consent to place solicitation telephone calls to Hale on her cellular telephone using an autodialer and/or prerecorded messages.

## PLAINTIFF CLINE'S ALLEGATIONS

**Teladoc through their Marketing Partner HII Repeatedly
Called Cline's Cell Phone Without Hale's Consent**

67.     On December 22, 2011, Cline registered his cellular phone number with the DNC in order to avoid receiving unsolicited telemarketing calls.

68.     Cline uses his cell phone for personal use. His cell phone number is not associated with a business.

69.     At the time that Cline received the calls associated with this case, he was located in Pennsylvania but maintains his principal residence in Florida.

70.     Cline began receiving autodialed and prerecorded calls from, or on behalf of Defendant Teladoc on his cellular phone in May of 2019.

71.     The autodialed and prerecorded calls that Cline received were placed by spoofed numbers that were not in service when called back.

72.     For example, on May 21, 2019, Cline received an autodialed call on behalf of Defendant Teladoc using phone number 754-218-9438. 754-218-9438 was not in service when Cline tried to call it back.

73.     On June 28, 2019, Cline received another autodialed call on behalf of Defendant using phone number 202-089-4718. 202-089-4718 was not in service when Cline tried to call it back.

74.     When Cline would answer the incoming calls, Cline noticed a significant pause before a live agent would come on the line, indicating the use of an autodialer.

75.     The agent would begin the solicitation of an insurance quote, at which point Cline would tell the agent to stop calling him.

76.     When Cline received prerecorded calls, Cline would hear a message soliciting a health insurance quote and would then select the option that would connect him with a live

agent. He would then tell the agents to stop calling, complaining often about the number of calls he was receiving and that he never consented to receiving these calls in the first place.

77.     In response to his opt-out claims, the agents would consistently respond by hanging-up the phone.

78.     Despite the multiple opt-out requests, Plaintiff Cline continued to receive autodialed and prerecorded calls on his cell phone.

79.     On July 16, 2019, Plaintiff Cline received an autodialed call from 918-219-1898 on behalf of Defendant Teladoc to his cell phone using phone number 918-219-1898. Cline answered the call and was connected to a live agent after a significant audible pause, indicative that the call was made using an autodialer.

80.     Cline spoke with a live agent and out of frustration and for the purposes of finally identifying the company behind these annoying calls, he decided to play along in order to find out who was calling him. Cline answered some qualifying questions for the purposes of his investigation and was connected with an agent named Barbara.

81.     Cline spoke with the insurance agent named Barbara about getting an insurance quote. When he hesitated about purchasing the plan, which was never Cline's intention in the first place, Barbara provided Cline with her direct phone number: 855-787-8595 extension 5410.

82.     When Cline tried calling 918-219-1898 back, it was not in service.

83.     On July 24, 2019, Cline called 855-787-8595 extension 5410 in order to determine exactly who was responsible for the multiple calls he was receiving.

84.     Cline spoke with Barbara giving her a fake name John Cahill so that he could finally identify which company was part of this scheme.

85.     Barbara provided him with an insurance plan application from MyBenefitsKeeper and he was directed to sign the application over the phone in a high-pressured sales tactic.  Cline

cancelled the agreement that day by emailing support@mybk.com.

86.     The insurance application specifically lists Teledoc as part of Plaintiff's intended

coverage:



87.     In total, Cline received well over 8 known calls on his cellular phone on behalf of

Defendant Teladoc by its telemarketer HII, despite not giving them consent to call him and

despite his repeated requests for the calls to stop.

88.     The unauthorized telephone calls made on behalf of the Defendant, as alleged

herein, have harmed both of the Plaintiffs in the form of annoyance, nuisance, and invasion of

privacy, and disturbed the use and enjoyment of their phones, in addition to the wear and tear on

the phones' hardware (including the phones' battery) and the consumption of memory on the

phones.

89.     Seeking redress for these injuries, Plaintiff Hale and Plaintiff Cline, on behalf of

themselves and Classes of similarly situated individuals, bring suit under the Telephone

Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits autodialed and unsolicited

prerecorded telephone calls to cellular telephones and unsolicited calls to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for TCPA Claims Arising From Calls Made by or On Behalf of Defendant Teladoc

90.     Plaintiff Hale and Plaintiff Cline bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following seven Classes:

**Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant Teladoc (or an agent acting on behalf of Defendant Teladoc) called, (2) on the person's cellular telephone, (3) using a prerecorded message, (4) without prior express written consent.

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant Teladoc through HII (or an agency acting on behalf of HII for the benefit of Defendant Teladoc) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, and (4) for whom Defendant Teladoc claims (a) it obtained prior express written consent in the same manner as Defendant Teladoc claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) it did not obtain prior express written consent.

**Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of the Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, (4) after the person informed Defendant or Defendant's agents that s/he no longer wished to receive phone calls from Defendant.

**Prerecorded Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular phone (3) using a prerecorded message, (4) after they informed the Defendant or Defendant's agents that they no longer wished to receive phone calls from the Defendant.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant Teladoc (or an agent acting on behalf of Defendant Teladoc) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Teladoc's products and services; and (5) for whom Teladoc claims (a) it

obtained prior express written consent in the same manner as Teladoc claims it supposedly obtained prior express written consent to call Plaintiff, or (b) Teladoc did not obtain prior express written consent.

**Do Not Call Stop Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendant Teladoc (or an agent acting on behalf of Teladoc) called more than one time, (2) within any 12-month period, (3) at least thirty days after the person had previously informed HII to stop calling.

**Internal Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendant Teladoc through HII (or an agent acting on behalf of HII) called more than one time on his/her cellular phone; (2) within any 12-month period (3) after the person had previously informed Teladoc (or an agent acting on behalf of Teladoc) to stop calling.

91.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. The Plaintiff's anticipate the need to amend the Class definitions following appropriate discovery.

92.     **Numerosity**: On information and belief, there are many hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

93.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff's and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Teladoc's agents utilized an automatic telephone dialing system to make its calls to the Plaintiffs and the members of the Classes;

(b) whether Defendant Teladoc's agents placed calls to Plaintiff Hale, Plaintiff Cline and the members of the Classes using a prerecorded message;

(c) whether Defendant Teladoc's agents placed calls to Plaintiff Hale, Plaintiff Cline and the members of the Classes using an autodialer;

(d) whether Defendant Teladoc's agents made multiple telephone calls to Plaintiff Hale, Plaintiff Cline and consumers whose telephone numbers were registered with the National Do Not Call Registry;

(e) whether Defendant Teladoc's agents made autodialed and/or prerecorded telephone calls to the Plaintiff's and members of the Classes without first obtaining prior express written consent to make the calls;

(f) whether Defendant Teladoc's agents continued to make autodialed and/or prerecorded calls to the Plaintiff's, and members of the Classes despite being asked to stop calling;

(g) whether Defendant Teladoc's conduct constitutes a violation of the TCPA; and

(h) whether members of the Classes are entitled to treble damages based on the willfulness of the Defendant.

94.    **Adequate Representation**: The Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. The Plaintiffs have no interests antagonistic to those of the Classes, and the Defendant does not have defenses unique to either of the Plaintiffs. Plaintiff Hale, Plaintiff Cline and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interests adverse to the Classes.

95.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with

respect to the Classes as wholes, not on facts or law applicable only to the Plaintiffs.

Additionally, the damages suffered by individual members of the Classes will likely be small

relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of

the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class

action provides the benefits of single adjudication, economies of scale, and comprehensive

supervision by a single court. Economies of time, effort, and expense will be fostered and

uniformity of decisions will be ensured.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hale and Cline and the Prerecorded No Consent Class)**

96.     Plaintiff Hale and Plaintiff Cline repeat and reallege paragraphs 1 through 95 of

this Complaint and incorporate them by reference.

97.     Defendant Teladoc through its telemarketing partner HII or its agents, transmitted

unwanted solicitation telephone calls to Plaintiffs and the other members of the Prerecorded No

Consent Class on behalf of Defendant Teladoc using a prerecorded voice message.

98.     These prerecorded voice calls were made *en masse* without the prior express

written consent of the Plaintiffs and the other members of the Prerecorded No Consent Class.

99.     Defendant Teladoc, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B).

As a result of Defendant's conduct, Plaintiffs and the other members of the Prerecorded No

Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages,

for each violation.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiffs Hale and Cline and the Autodialed No Consent Class)**

100.    Plaintiffs Hale and Cline repeat and reallege paragraphs 1 through 95 of this Complaint and incorporate them by reference.

101.    Defendant Teladoc through its telemarketers and agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiffs and the other members of the Autodialed No Consent Class for the benefit of the Defendant using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

102.    These solicitation telephone calls were made *en masse* without the prior express written consent of Plaintiffs Hale and Cline and the other members of the Autodialed No Consent Class.

103.    Defendant Teladoc through its telemarketing agents, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiffs Hale and Cline and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hale, Plaintiff Cline and the Autodialed Stop Class)**

104.    Plaintiffs Hale and Cline repeat and reallege paragraphs 1 through 95 of this Complaint and incorporate them by reference.

105.    Defendant Teladoc through its telemarketing arrangements, made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiffs Hale and Cline and the other members of the Autodialed Stop Call Class after being told to stop calling.

106.    These solicitation telephone calls were made *en masse* after the Plaintiffs and the members of the Autodialed Stop Class informed Defendant's telemarketing agents to stop calling

19

them.

107.     Defendant Teladoc has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendant's conduct, Plaintiffs Hale and Cline and the other members of the Autodialed Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**FOURTH CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Hale and Cline and the Prerecorded Stop Class)**

108.     Plaintiffs Hale and Cline repeat and reallege paragraphs 1 through 95 of this Complaint and incorporate them by reference.

109.     Defendant Teladoc through its telemarketers made unwanted solicitation telephone calls to telephone numbers belonging to Plaintiffs Hale and Cline and the other members of the Prerecorded Stop Call Class after being informed to stop calling.

110.     These solicitation telephone calls were made *en masse*.

111.     Defendant Teladoc has, therefore, violated 47 U.S.C. §§ 227(b)(1)(B). As a result of Defendant's conduct, Plaintiffs Hale and Cline and the other members of the Prerecorded Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**FIFTH CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Hale and Cline and the Do Not Call Registry Class)**

112.     Plaintiffs Hale and Cline repeat and reallege the paragraphs 1 through 95 of this Complaint and incorporate them by reference herein.

113.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons

who do not wish to receive telephone solicitations that is maintained by the federal government."

114.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[21]

115.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

116.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

117.    Defendant Teladoc through hiring telemarketers to makes calls on its behalf violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Hale, Plaintiff Cline, and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

118.    Defendant Teladoc through the action of hiring telemarketers to make telemarketing calls on its behalf violated 47 U.S.C. § 227(c)(5) because the Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of HII in violation of 47 C.F.R. § 64.1200, as described above. As a result of

---

[21] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Defendant's conduct as alleged herein, Plaintiffs Hale and Cline, and the Do Not Call Registry

Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to

receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

119.    To the extent Defendant's misconduct is determined to be willful and knowing,

the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages

recoverable by the members of the Do Not Call Registry Class.

**<u>SIXTH CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Hale and Cline and the Do Not Call Registry Stop Class)**

120.    Plaintiffs Hale and Cline incorporate by reference paragraphs 1 through 95 of this

Complaint and incorporates them herein by reference.

121.    Defendant Teladoc through its agents violated 47 C.F.R. §64.1200 by initiating

calls for telemarketing purposes to telephone subscribers such as Plaintiffs Hale and Cline and

the Do Not Call Registry Stop Class who specifically informed Defendant's agents agents

working on its behalf to stop calling them, and who received two or more additional calls within

a 12-month period on behalf of the Defendant at least thirty (30) days after informing Defendant

and/or their brokers to stop calling them.

122.    Defendant Teladoc and/or its lead generator HII made these calls without

instituting procedures that comply with the regulatory minimum standards for maintaining a list

of persons who request not to receive telemarketing calls from them.

123.    Defendant failed to ensure or oversee that its telemarketers were opting out

consumers on the DNC who specifically requested that the calls stop.

124.    As a result of Defendant's conduct, Plaintiffs Hale and Cline, and the Do Not Call

Registry Stop Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiffs

Hale and Cline and each member of the Do Not Call Registry Stop Class are each entitled to

between $500 and $1,500 per violation.

## SEVENTH CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Hale, Plaintiff Cline and the Internal Do Not Call Stop Class)

125.   Plaintiffs Hale and Cline incorporate by reference paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

126.   Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for

telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

127.    Defendant Teladoc through its agents made autodialed and/or prerecorded marketing calls to Plaintiffs Hale and Cline and members of the Internal Do Not Call Class without ensuring that Teladoc's telemarketers implemented internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

128.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

129.    The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiffs Hale and Cline and the other members of the Internal Do Not Call List Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Hale and Cline, individually and on behalf of the Classes,

pray for the following relief:

a)  An order certifying the Classes as defined above; appointing Plaintiffs Hale and
    Cline as the representatives of the Classes; and appointing their attorneys as Class
    Counsel;

b)  An award of actual and/or statutory damages to be paid into a common fund for
    the benefit of the Plaintiffs and the Classes;

c)  An order declaring that Defendant Teladoc's actions, as set out above, violate the
    TCPA;

d)  A declaratory judgment that Defendant Teladoc made telephone calls to
    consumers using calling equipment that constitutes an automatic telephone dialing
    system under the TCPA;

e)  An order requiring Defendant Teladoc to disgorge any ill-gotten funds acquired as
    a result of their unlawful telephone calling practices, or benefit gained from
    unlawful telephone calling practices;

f)  An injunction requiring Defendant Teladoc to cease all unsolicited calling
    activity, and to otherwise protect the interests of the Classes; and

g)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

**APRIL HALE** and **LEN CLINE**, individually, and
on behalf of those similarly situated individuals

Dated: July 8, 2020                    By: _/s/ Stefan Coleman_
                                       Stefan Coleman
                                       law@stefancoleman.com
                                       LAW OFFICES OF STEFAN COLEMAN, P.A.
                                       11 Broadway, Suite 615
                                       New York, NY 10001
                                       Telephone: (877) 333-9427
                                       Facsimile: (888) 498-8946

                                       Avi R. Kaufman*
                                       kaufman@kaufmanpa.com

KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Anthony I. Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice motion forthcoming*