UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
APRIL HALE, individually, and LEN CLINE,     :
individually and on behalf of all others      :
similarly situated,                           :
                       Plaintiffs,     :
v.                                            :
                                           :
TELEDOC HEALTH, INC,                          :
                       Defendant.     :
------------------------------------------------------------x

**OPINION AND ORDER**

20 CV 5245 (VB)

Briccetti, J.:

Plaintiffs April Hale and Len Cline bring this putative class action against Teledoc Health, Inc. ("Teledoc"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Plaintiffs claim Teledoc contracted with Health Insurance Innovation, Inc. ("HII"), to market Teledoc's services by calling consumers without the consumers' consent.

Now pending is defendant's motion to dismiss pursuant to Rule 12(b)(6), or in the alternative, to stay the action.  (Doc. #17).[1]

For the reasons set forth below, the motion to dismiss is GRANTED.  The motion to stay is DENIED as moot.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiffs' favor, as set forth below.

---

[1] After defendant moved to dismiss and plaintiffs were offered an opportunity to file an amended complaint (Doc. #19), plaintiffs declined to amend and instead notified the Court that they intended to rely on the complaint that is the subject of the motion to dismiss.  (Doc. #21).

Plaintiffs April Hale and Len Cline placed their cell phone numbers on the national "Do Not Call" registry ("DNC Registry"), a directory of consumers who "opted out" of future telemarketing calls.  (Doc. #1 ("Compl.") ¶¶ 38, 67).

Plaintiffs allege that, despite their numbers appearing on the DNC Registry, they received numerous prerecorded phone calls from multiple phone numbers between March 2018 and July 2019.  Plaintiffs both became frustrated with the calls they received, and they each answered at least one call specifically to opt out of receiving future calls.  Plaintiffs claim they both asked a live agent—as opposed to a prerecorded message or response system—to stop calling them. They also claim to have pressed buttons to opt out of future calls in response to prompts from prerecorded response systems.  (Compl. ¶¶ 48–49, 75–76).

Plaintiffs allege they pretended to be interested in the product marketed through the phone calls to find out who was responsible for the calls.  (Compl. ¶¶ 52, 80, 84–86).  Upon speaking to live agents, plaintiffs claim they received quotes for an insurance product marketed by HII called MyBenefitsKeeper.  Plaintiffs allege MyBenefitsKeeper included a membership to defendant Teledoc's remote medicine services.

Hale claims she "acted like she was interested in getting" an insurance quote from one of the telemarketing agents who called her, and "provided a fake name."  (Compl. ¶ 52).  Once a quote was provided, Hale asked to see the plan in writing.  Hale says she received an email from HII containing a MyBenefitsKeeper plan that stated it included a membership to Teledoc.  (Id. ¶ 52–53).  Hale alleges that, on another occasion, she followed a link sent to her via text message that contained an application for MyBenefitsKeeper.  She claims that application also contained an application for services offered by Teledoc.

Similarly, Cline spoke with a live agent "out of frustration" and gave the agent a fake name to identify the company responsible for calling him.  (Compl. ¶ 80, 84–85).  Cline alleges he was provided with an insurance plan application from MyBenefitsKeeper, and was pressured to sign the application over the phone.  (Id. ¶ 85).  Cline claims he received an email detailing the coverage included in the plan he requested membership in.  Under a section titled "Your Coverage," the email includes a line for "Teladoc 24/7 doctor visits by telephone."  (Id. ¶ 86).

Plaintiffs allege HII operates an outbound call center and lead generator for Teledoc, and acts as Teledoc's agent.  Plaintiffs allege HII and Teledoc had an agreement, and "HII was given actual and apparent authority by [] Teledoc to bind the consumer . . . and to represent to others they had partnered with [] Teledoc."  (Compl. ¶ 17–18).  According to plaintiffs, Teledoc "ratified HII and its lead generators['] actions by accepting the benefits from HII and its lead generators['] telemarketing practice[s]."  (Id. ¶ 19).

Plaintiffs claim that, by March 2019, HII had been sued numerous times for TCPA violations.  According to plaintiffs, these suits were public and "Teledoc knew or should have known about HII's past allegations of violating the TCPA when [] Teledoc contracted with HII to make telemarketing calls on its behalf."  (Compl. ¶ 24–25).

Plaintiffs do not allege HII specifically mentioned Teledoc's services in its calls to plaintiffs.  For example, Hale alleges one of the prerecorded calls she received stated:  "[t]his is Quality A Plus Insurance.  If you are interested in talking to a licensed Agent, press 8.  If not, press 4."  (Compl. ¶ 63).  In addition, Cline claims when he answered prerecorded calls, he heard a message soliciting a health insurance quote.  He also claims he spoke with a live agent named Barbara about getting an insurance quote, but he does not allege Barbara mentioned Teledoc by name.

Plaintiffs bring claims under the TCPA on behalf of themselves and a putative class of consumers who received calls from HII purportedly on behalf of Teledoc.[2]

**DISCUSSION**

I.   <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).[3]  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

---

[2]     The TCPA permits a private cause of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the" statute.  47 U.S.C. § 227(c)(5); <u>see</u> 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to persons who have registered their phone numbers on the national do-not-call registry).

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.    <u>Vicarious Liability Under the TCPA</u>

There is no dispute Teledoc did not directly initiate or make any calls to plaintiffs. Accordingly, whether Teledoc is liable for the calls at issue turns on whether Teledoc can be held vicariously liable for HII's phone calls.

Federal courts have almost uniformly held the TCPA imposes vicarious liability based on federal common-law principles of agency.  <u>See</u> <u>Campbell-Ewald Co. v. Gomez</u>, 577 U.S. 153, 168 (2016) ("The Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations . . . and we have no cause to question it."); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Kristensen v. Credit Payment Servs. Inc.</u>, 879 F.3d 1010, 1014 (9th Cir. 2018); <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, 30 F. Supp. 765, 773–74 (N.D. Ill. 2014); <u>Shcherb v. Angi Homeservices Inc.</u>, 2019 WL 5538030, at *2 n.2 (S.D.N.Y. Oct. 25, 2019).

To hold a defendant vicariously liable for a non-party telemarketer's TCPA violations, a plaintiff must plausibly allege the defendant acted as the telemarketer's principal in an agency relationship.  <u>See</u>, <u>e.g.</u>, <u>Jackson v. Caribbean Cruise Line, Inc.</u>, 88 F. Supp. 3d 129, 138–39 (E.D.N.Y. 2015) (dismissing TCPA claims against cruise line where complaint contained only conclusory allegations the cruise line had power to give interim instructions to marketer who sent text messages).

A principal may be vicariously liable for the acts of its agent when:  (i) when the agent acts with actual authority, (ii) the agent acts with apparent authority, and (iii) the principal ratifies the unlawful acts of its agent.  <u>See</u> <u>In re Dish Network, LLC</u>, 28 F.C.C.R. 6574, 6586–87 (2013); <u>see also</u> Restatement (Third) of Agency §§ 7.03, 7.07.

A.      <u>Actual Authority</u>

A principal may only be liable for the acts of its agent under a theory of actual authority when there exists an explicit agency relationship.  Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent to or otherwise consents so to act."  Restatement (Third) of Agency § 1.01 (2006).  "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."  <u>Johnson v. Priceline.com, Inc.</u>, 711 F.3d 271, 278 (2d Cir. 2013).  To be liable for the acts of its agent, a principal must exercise control over the conduct or activities of the agent.  <u>See</u> <u>Jackson v. Caribbean Cruise Line, Inc.</u>, 88 F. Supp. 3d at 138.

Actual authority may be express or implied, but "exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act."  <u>Themis Capital, LLC v. Democratic Republic of Congo</u>, 881 F. Supp. 2d 508, 520 (S.D.N.Y. 2012).  The existence of actual authority "depends upon the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship."  <u>Id</u>.

"To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority."  <u>Skanga Energy & Marine Ltd. v. Arevenca S.A.</u>, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012).

Defendant argues plaintiffs do not plausibly allege an agency relationship between Teledoc and HII because the complaint lacks any facts permitting an inference that Teledoc exercised any control over HII.

The Court agrees.

The complaint contains no factual allegations raising an inference that Teledoc exercised any control over HII's calls to plaintiffs.  Plaintiffs do not allege HII's callers ever mentioned Teledoc or its services by phone.  They do not allege facts suggesting Teledoc directed HII to make the calls at issue, nor do they claim Teledoc wrote or approved any call scripts.  Cf., e.g., Smith v. State Farm Mut. Auto. Ins. Co., 30 F. Supp. 3d 765, 775–76 (N.D. Ill. 2014) (finding vicarious liability plausibly alleged when defendant hired telemarketer, directed quality, timing, and volume of calls, and provided information regarding nature of pricing to allow telemarketer to route customers to defendant's insurance agents).  Plaintiffs' conclusory allegations that HII made the calls at issue on Teledoc's behalf are insufficient to support a reasonable inference of actual authority, and do not plausibly allege Teledoc exercised any interim control over HII or its conduct.  See, e.g., Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d at 138 (finding allegations of a contract between cruise line and telemarketer sending text message did not allege power to give interim instructions, and non-conclusory allegations failed to "nudge" claims "across the line from conceivable to plausible").

The only alleged link between Teledoc and the calls at issue is that Teledoc's services were included in the insurance bundle sold by HII.  But the inclusion of Teledoc's services in HII's insurance bundle, alone, is insufficient to permit even a circumstantial inference that HII called plaintiffs at Teledoc's direction or subject to Teledoc's control.  Plaintiffs' conclusory allegations to the contrary are insufficient to "nudge" plaintiffs' claims from conceivable to

plausible.  See Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d at 138; Ashcroft v. Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility.")

Other courts have dismissed complaints containing far more detailed allegations of an agency relationship between a defendant and a non-party telemarketer.  See, e.g., Bilek v. Federal Ins. Co., 2020 WL 3960445, at *5 (N.D Ill. July 13, 2020) (finding allegations that insurance company provided HII with script and directed HII to make robocalls on its behalf were insufficient to allege interim control over telemarketers); Bank v. Vivint Solar, Inc., 2019 WL 1306064, at *4–*5 (E.D.N.Y. Mar. 22, 2019) (finding allegations that robocall did not promote defendant's services in particular is insufficient to allege agency relationship even though plaintiff was later transferred to live agent promoting defendant's services).

Accordingly, plaintiffs fail plausibly to allege any agency relationship between Teledoc and HII, and Teledoc cannot be held vicariously liable for HII's calls under a theory of actual authority.

B.     Apparent Authority

Defendant next argues plaintiffs' allegation that "HII was given actual and apparent authority by [Teledoc] to bind the consumer" (Compl. ¶ 18) is insufficient to allege Teledoc is vicariously liable for HII's calls under a theory of apparent authority.

The Court again agrees.

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Smith v. State Farm Mut. Auto. Ins. Co., 30 F. Supp. 3d 765, 778 (N.D. Ill. 2014) (emphasis added).

"It is well-established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent." <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, 30 F. Supp. 3d at 778; <u>see also</u> <u>Opp v. Wheaton Van Lines, Inc.</u>, 231 F.3d 1060, 1064 (7th Cir. 2000) ("[O]nly the words or conduct of the alleged principal, not the alleged agent, establish the [actual or apparent] authority of an agent."); <u>accord</u> <u>Highland Capital Mgmt. LP v. Schneider</u>, 607 F.3d 322, 328 (2d Cir. 2010). "[F]or apparent authority to exist, the principal must communicate either directly or indirectly with the third party or take some action that instills in the third party a reasonable belief that the actor had authority to act as the principal's agent." <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, 30 F. Supp. 3d at 778. "Essential to the creation of apparent authority are words or conduct of the principal." <u>See</u> <u>Highland Capital Mgmt. LP v. Schneider</u>, 607 F.3d at 328.

Here, plaintiffs fail to allege Teledoc manifested that HII was its agent or took any action to induce plaintiffs to believe HII was Teledoc's agent. Plaintiffs allege HII listed Teledoc's services in a list of coverage for MyBenefitsKeeper, but they fail to trace this representation to any conduct or manifestation by Teledoc. Plaintiffs allege no "statements or actions" of Teledoc, the alleged principal. Accordingly, even accepting plaintiffs' allegations as true, Teledoc cannot be held vicariously liable for HII's alleged TCPA violations under a theory of apparent authority. <u>See</u> <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, 30 F. Supp. 3d at 778.

C.    <u>Ratification</u>

Finally, defendant argues plaintiffs' conclusory allegation that Teledoc "ratified HII and its lead generators['] actions by accepting the benefits from HII and its lead generators['] telemarking practice[s]" (Compl. ¶ 19), is insufficient to allege Teledoc ratified HII's unlawful calls to plaintiffs.

The Court agrees.

A principal may ratify an agent's unauthorized conduct even if the agent lacked actual authority.  See Restatement (Third) of Agency § 4.04.  "Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized arrangement."  Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd., 835 F.2d 32, 36 (2d Cir. 1987).  "In most jurisdictions, ratification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act.  It is necessary that the actor have acted or purported to act on behalf of the ratifier."  Restatement (Third) of Agency § 4.01 cmt. b.

A principal ratifies his or her agent's acts "either by manifesting assent that the act shall affect the person's legal relations or through conduct that justifies a reasonable assumption that the person so consents."  Chevron Corp. v. Donziger, 833 F.3d 74, 150 (2d Cir. 2016) (quoting Restatement (Third) of Agency § 4.01(2)).  A plaintiff must allege an "objectively or externally observable indication that the principal has exercised choice and has consented to the acts of the purported agent."  Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1073 (9th Cir. 2019) (quoting Restatement (Third) of Agency § 4.06).  Alternatively, a principal may ratify a third party's conduct through willful ignorance, or not knowing the material facts but "ratif[ying] with awareness that such knowledge was lacking."  See id. at 1073–74 (quoting Restatement (Third) of Agency § 4.01 cmt. b).

Plaintiffs' conclusory allegation that Teledoc accepted the benefits of HII's unlawful marketing is insufficient to allege Teledoc ratified HII and its lead generators' conduct.  Initially, plaintiffs fail to allege facts permitting the Court to infer Teledoc accepted any benefits from HII.  Plaintiffs' allegation that Teledoc "directly benefits from HII's telemarking as it is the

beneficiary of any sale made by HII" is conclusory.  (Compl. ¶ 4).  Neither plaintiff alleges they

signed up for HII's insurance bundle or paid for Teledoc's services as a result of HII's

solicitations and unlawful telemarketing.  Instead, to infer Teledoc accepted the benefits of HII's

allegedly unlawful marketing practices, the Court would be forced to speculate that some

customer similarly situated to plaintiffs purchased Teledoc's services through HII's insurance

bundle after receiving calls that violated the TCPA.  No facts in the complaint permit the Court

to make such an inference.  Thus, plaintiffs fail to allege Teledoc accepted the benefits of HII's

unlawful calls.

Moreover, even assuming Teledoc accepted the benefits of HII's unlawful marketing

practices by taking payments from customers, the complaint is devoid of any factual allegations

about Teledoc and its manifestations or conduct.  Nowhere do plaintiffs allege an "objectively or

externally observable indication" that Teledoc "exercised choice and [] consented to the acts" of

HII.  See Henderson v. United Aid Funds, Inc., 833 F.3d at 150.

Further, plaintiffs fail to allege Teledoc knew or should have known that HII made

unlawful calls.  That HII had previously been sued, alone, is insufficient to allege Teledoc's full

knowledge of HII's unlawful conduct.  See, e.g., Rodonich v. House Wreckers Union Local 95

of Laborers' Intern. Union, 817 F.2d 967, 973 (2d Cir. 1987) (finding "mere allegations of

unlawful discipline" insufficient to establish national union's full knowledge of local union's

conduct for ratification).  Moreover, because plaintiffs allege in only a conclusory fashion that

Teledoc should have been aware of lawsuits against HII and its marketers, those allegations are

insufficient plausibly to plead Teledoc ratified HII's conduct through willful ignorance or

"awareness that [its] knowledge was lacking."  See Henderson v. United Student Aid Funds,

<u>Inc.</u>, 918 F.3d at 1073–74.  The complaint contains no factual allegations regarding what Teledoc knew or should have known.

Accordingly, plaintiffs fail plausibly to allege Teledoc ratified HII's alleged TCPA violations.

## CONCLUSION

The motion to dismiss is GRANTED and the motion to stay is DENIED as moot.

The Clerk is instructed to terminate the motion (Doc. #17) and close this case.

Dated: March 24, 2021
      White Plains, NY

                        SO ORDERED:

                        _____
                        Vincent L. Briccetti
                        United States District Judge